DICKINSON, PRESIDING JUSTICE,
DISSENTING:
¶25. When Mississippi established its current Constitution in 1890, it granted to the courts of chancery not only the-jurisdiction over matters controlled by principles of equity, but also jurisdiction over several areas controlled by law, including “[djivorce and alimony,” and “minor’s business.”[5] Since its origin in England in 1576,[6] the duty to support children has been, controlled by legal (“common law”) principles.
¶26. At common law, parents had an obligation to support their children. But when a child displayed a certain level of disrespect for a noncustodial parent, judges had the discretion to relieve that parent of the obligation to pay child support. And generally, we still apply common-law principles and doctrines to the issues before us.
¶ 27. But it is the Legislature—not this Court—that decides whether to leave common-law principles and doctrines in place or to supplant them with statutes; and when the Legislature, through its statutes, speaks on a matter of substantive law, the statutory law supplants the common law.[7] So, if the case before us is to be decided properly, the first question is whether the Legislature has created a child-support obligation. Clearly it has. And statutes supplant the common law, so chancellors must look to statutes for their authority to award—or not to award—child support. And if their cases are to be decided properly, they must follow the law.
¶ 28. The majority correctly ¡ observes ■that statutory enactments may not take away from, constitutional mandates; but that observation has no .bearing here. Nothing in any constitutional provision cited by the majority creates a duty to pay child support. Thus, courts should look to the content of the statutes that control child support.
¶ 29. Section 43-19-101 seems quite clear to me.- It creates a rebuttable presumption that child support should be paid in a certain amount based on the number of children and the paying parent’s adjusted gross income.[8] Under the statute, the “presumption applies -in all judicial or administrative .proceedings regarding the awarding or modifying of child support in this state.”[9] And the presumption controls •the amount awarded unless
the judicial or administrative body awarding or modifying the child support award makes a written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case as de *100 termined under the criteria specified in Section 43-19-103.”[10]
¶ 30. The section following this mandate sets forth the criteria which may be considered to rebut the presumption:
(a) Extraordinary medical, psychological, educational or dental expenses.
(b) Independent income of the child. ■
(c) The payment of both child support and spousal support to the obligee.
(d) Seasonal variations in one or both parents’ incomes or expenses.
(e) The age of the child, taking into account the greater needs of older children.
(f) Special needs that have traditionally been met within the family budget even though the fulfilling of those needs will cause the support to exceed the proposed guidelines.
(g) The particular shared parental arrangement, such as where the noncustodial parent spends a great deal of time with the children thereby reducing the financial expenditures incurred by the custodial parent, or the refusal of the noncustodial parent to become involved in the activities of the child, or giving due consideration to the custodial parent’s homemaking services.
(h) Total available assets of the obli-gee, obligor and the child.
(i) Payment by the obligee of child care expenses in order that the obligee may seek or retain employment, or because of the disability of the obli-gee.
(j)Any other adjustment which is needed to achieve an equitable result which may include, but not be limited to, a reasonable and necessary existing expense or debt.[11]
¶31. Through subsection (j)’s catchall provision, the Legislature has granted chancellors broad discretion to find that the statutory presumptions have been rebutted based on the demands of equity— broad enough, in my view, to encompass the clear and extreme conduct described in Caldwell v. Caldwell,[12] which the chancellor found.
¶ 32. But the chancellor’s analysis should have began with the rebuttable presumption that Gary must pay child support in the amount set by statute, followed by specific findings as to how the presumption was rebutted.[13] And this analysis should have been applied to Gary’s obligation to pay child support as to each child.
¶ 33. My colleague, Justice Coleman, unnecessarily worries that this issue was not presented to the trial court. Clearly, the chancellor decided the issue of whether Gary’s child-support obligation should be terminated. Amanda appealed that decision. So he and the majority are incorrect when they suggest I would hold the chancellor in error for an issue not presented to him. The issue—whether the child-support obligation should be terminated—was addressed and decided in the trial court. My resort to the statutes simply applies *101 the correct law to determine whether the chancellor’s decision was correct.
¶ 34. Justice Coleman agrees that the common-law duty to pay child support has been supplanted by our statutes,[14] but he finds no reversible error because “Amanda Copeland failed to argue at the time or on written motion for rehearing that the trial court erred in” relying on Caldwell,[15] Justice Coleman points to no rule that requires an attorney to file a post-trial motion, and I will not find an issue unappealable because an attorney failed to do something he was not required to do—especially in a case dealing with child support and child custody, such as this one.
¶35. Because the chancellor failed to follow controlling statutory mandates before terminating child support, I would remand for a proper analysis under the applicable statutory provisions.
KITCHENS AND KING, JJ., JOIN THIS OPINION. COLEMAN, J., JOINS THIS OPINION IN PART.

. Miss. Const, art. 6, § 159.

. Act For Setting of the Poor on Work, and for the Avoiding of Idleness, 18 Elizabeth 1, C. 3 (1576).

. See e.g. DeSoto Cty. v. T.D., 160 So.3d 1154, 1156-58 (Miss. 2015) ("Others, including Mississippi, have supplanted the common law with statutes that have established the-legislative branch’s views of the appropriate limits and protections of sovereign immunity. .. .Were we applying common-law immunity, we would be free to limit that immunity. .But the Legislature removed our discretion with the Mississippi Tort Claims Act.”).

. Miss. Code Ann. § 43-19-101 (Rev. 2015).

. Miss, Code Ann. § 43-19-101(1) (Rev. 2015) (emphasis added).

. Miss. Code Ann. § 43-19-101(2) (Rev. 2015).

. Miss. Code Ann. § 43-19-103 (Rev. 2015).

. Caldwell v. Caldwell, 579 So.2d 543, 548 (Miss. 1991).

. See Chesney v. Chesney, 910 So.2d 1057, 1061 (Miss. 2005) (citing McEachern v. McEachern, 605 So.2d 809, 814 (Miss. 1992)) ("However, for this Court to affirm an award which deviates from the guideline of Section 43-19-101(1), the chancellor must overcome the rebuttable presumption that the statutory award is the appropriate measure of child support by making an on-the-record finding that it would be unjust or inappropriate to apply the guidelines in the instant case.”).

. Coleman Op. at ¶ 22.

. Coleman Op. at ¶ 23.